## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 20-22438-Civ-WILLIAMS/TORRES

JOSE ANTONIO RUIZ BURGOS,

      Plaintiff,

v.

ANDREW SAUL, Acting Commissioner of
the Social Security Administration,

      Defendant.

_____/

## REPORT AND RECOMMENDATION ON THE PARTIES'
## CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the parties' cross motions for summary judgment filed by Jose Antonio Ruiz Burgos ("Plaintiff") [D.E. 21] and Andrew Saul, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner") [D.E. 22] on whether the Administrative Law Judge (the "ALJ") properly weighed the evidence presented in reaching his unfavorable decision. Under the limited standard of review that governs this case, the Court finds that the motions are ripe for disposition and that substantial evidence supports the ALJ's determination.[1]  For the reasons stated below, Plaintiff's motion for summary judgment [D.E. 21] should be **DENIED**, Defendant's motion for summary judgment

_____

[1]    On June 12, 2020, the Clerk referred to the undersigned Magistrate to enter a Report and Recommendation on any dispositive matters.   [D.E. 2].

1

[D.E. 22] should be **GRANTED**, and the decision of the ALJ should be **AFFIRMED**.

## I.    *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff was born in 1970 and has a twelfth-grade education. In 1999, Plaintiff had knee replacement surgery. Plaintiff then worked as a truck driver in Puerto Rico for various companies between 2004 and 2017. In 2017, Plaintiff had a workplace accident that caused him to have shoulder surgery. After the surgery and completing physical therapy, Plaintiff moved to Miami, Florida to live with his sister.

Plaintiff did not look for work once in Miami because of his physical ailments. Instead, on June 21, 2017, Plaintiff applied for social security disability benefits and alleged a disability onset date of June 15, 2017. The Commissioner denied Plaintiff's applications at the initial and reconsideration levels. Plaintiff then requested a hearing before the ALJ that took place on November 5, 2019. After considering the record and the testimony of a vocational expert ("VE"), the ALJ issued an unfavorable decision on November 26, 2019.

At step one of the five-step sequential process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 15, 2017. The ALJ found at step two that Plaintiff had the severe impairments of obesity, hypertension, dysfunction of major joints, spine disorders, reconstructive surgery of weight bearing joint, depressive, bipolar and related disorders, and somatic symptom related disorders. The ALJ then determined that his severe impairments did not meet any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, including the listings contained in §§ 1.02, 10.4, 12.04, 12.06, and 12.07.

Prior to moving to step four, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R § 404.1567(b) with some exceptions.  The ALJ then proceeded to step four and determined that Plaintiff could not perform his past relevant work as a truck driver.  The ALJ then determined that there were jobs in significant numbers in the national economy that Plaintiff could perform based on his age, inability to communicate in English, education, work experience, and RFC determination.   These jobs included cashier II, cigar inspector, and furniture rental consultant.

On May 21, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision.  Plaintiff then filed this action seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405(g).   Accordingly, this action is now ripe for disposition.

## II.    STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to an inquiry into whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied.   *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kelley v. Apfel*, 185 F.3d 1211, 1212 (11th Cir. 1999). "Substantial evidence is more than a scintilla, but less than a preponderance.   It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)).

3

In testing for substantial evidence, a court is not to "reweigh the evidence" or "decide the facts anew." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citing another case). Instead, so long as an ALJ's findings are supported by substantial evidence, a court must defer to the ALJ's decision even if the evidence may preponderate against it. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings."); *Miles*, 84 F.3d at 1400; 42 U.S.C. § 405(g). However, no presumption of validity attaches to the Commissioner's conclusions of law. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). A court also reviews an ALJ's decision to determine whether the correct legal standards were applied. *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). In this respect, "the ALJ has a basic obligation to develop a full and fair record," as a hearing before an ALJ is not an adversary proceeding. *Id.* (citing another source).

Ultimately, it is the function of the Commissioner to resolve conflicts in the evidence and to assess the credibility of the witnesses. *See Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). It is also the responsibility of the Commissioner to draw inferences from the evidence, and those inferences cannot be overturned if they are supported by substantial evidence. *See Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, a court's responsibility is to ensure that the proper legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

### III.      ANALYSIS

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).   The claimant bears the burden of producing evidence that proves her or she meets this statutory definition.   "The social security regulations establish a five-step evaluation process, which is used to determine disability for both SSI and DIB claims" and "[t]hese regulations place[] a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Spencer v. Heckler,* 765 F.2d 1090, 1093 (11th Cir. 1985)).   The steps are followed in order to determine if the claimant is disabled.

An ALJ must first determine whether the claimant is presently employed.   If so, a finding of non-disability is made, and the inquiry ends.   *See* 20 C.F.R. § 404.1520(b).   In the second step, an ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments.   If an ALJ does not make such a finding, then the inquiry ends.   *See id.* at § 404.1520(c).   At step three, an ALJ compares the claimant's impairments with specific impairments under the regulations that require a finding of disability without further inquiry into the claimant's ability to perform other work.   *See Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985) ("Certain impairments are so severe either when considered alone or

in conjunction with other impairments that, if such impairments are proved, the regulations require a finding of disability without further inquiry into the claimant's ability to work."). If the claimant's impairment meets or equals a listed impairment, the claimant's disability is presumed, and benefits are awarded. *See* 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing past relevant work. If the claimant cannot perform past relevant work, then a prima facie case of disability is established. An ALJ assesses a claimant's RFC at this stage, based on the other relevant evidence, to determine the extent of a claimant's ability to work despite the alleged impairments. *See id.* at § 416.945(a)(1). A claimant's RFC is an administrative finding of fact concerning the claimant's maximum remaining capacity to perform work-related physical and mental activities on a regular and continuing basis despite the functional limitations and environmental restrictions imposed by his or her medically determinable impairment(s).

When making this finding, an ALJ is required to identify the limitations and/or restrictions imposed by the claimant's impairments and then assess his or her work-related abilities on a function-by-function basis. Only upon the conclusion of this function-by-function analysis may an ALJ express the claimant's RFC in terms of the exertional levels of work, i.e., sedentary, light, medium, heavy, and very heavy.

This leads to step five – the final inquiry – where the burden shifts to the Commissioner to show that there is other work available in the national economy

that the claimant can perform based on the claimant's RFC, work experience, education, and age.   *See id.* at § 404.1520(e)-(f).

On appeal, Plaintiff asserts that the ALJ's decision must be remanded for three separate reasons: (1) the ALJ failed to properly evaluate the medical opinion evidence, (2) the ALJ's RFC finding is not supported by substantial evidence, and (3) the ALJ improperly discredited Plaintiff's subjective statements.   Competent evidence in the record, however, support's the ALJ's conclusions on each score.

### A.   *The ALJ Properly Considered the Medical Opinion Evidence*

Plaintiff first argues that the ALJ failed to properly consider the medical opinions of Omart Robaina, M.D, Plaintiff's primary treating physician.   As an initial matter, the rules for evaluating medical opinions in social security cases have changed.   The new regulations apply to claims filed on or after March 27, 2017, stating that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."   20 C.F.R. § 404.1520c(a). All medical opinions are instead evaluated according to the factors listed in § 404.1520c(c), of which the most important are the supportability and consistency of the medical opinion.   And the Commissioner is not required to articulate how it "considered each medical opinion or prior administrative medical finding from one medical source individually."   § 404.1520c(b)(1).

Supportability refers to the relevance of "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her" opinion.   § 404.1520c(c)(1).   Consistency looks to whether "the evidence from other

medical sources and nonmedical sources in the claim" are consistent with the medical opinion presented. § 404.1520c(c)(2). The other factors, which the ALJ is not required to consider concern the medical source's relationship with the claimant, the medical source's specialization, and any "other factors that tend to support or contradict a medical opinion." *See* §§ 404.1520c(c)(2)-(5); *see also Mudge v. Saul*, 2019 WL 3412616, *4 (E.D. Mo. July 29, 2019) ("Other than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness.") (citing 20 C.F.R. § 404.1520c(b)(2) ("We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we considered medical opinions and prior administrative medical findings in [a claimant's] case record.")).

Thus, under the revised regulations, the ALJ *must* articulate how persuasive it finds all the medical opinions in the record, specifically articulating how it considered the supportability and consistency factors for a medical source's opinion. *See* 20 C.F.R. § 404.1520c(b); *see also Bonilla v. Saul*, No. 19-25323-CIV, 2020 WL 9048787, at *4, n.5 (S.D. Fla. Oct. 23, 2020), *report and recommendation adopted*, No. 19-CV-25323, 2021 WL 1198296 (S.D. Fla. Mar. 30, 2021) ("The new regulations are, in some respects, consistent with prior Eleventh Circuit decisions because an ALJ could always "reject any medical opinion if the evidence supports a contrary finding.") (citing *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007)). If the ALJ finds that two or more medical opinions are equally well-

supported and consistent with the record, but not the same, the ALJ must articulate how it considered other persuasive factors. *See* 20 C.F.R. § 404.1520c(b)(3).

Here, Dr. Robaina opined that Plaintiff could not work any hours in a day primarily because Plaintiff suffered from severe issues with his shoulders and left knee. Plaintiff concedes that the ALJ discussed the opinions of Dr. Robaina but found them "not well supported" and "unpersuasive". [D.E. 17, pg. 33]. Indeed, the ALJ discussed the supportability and consistency of Dr. Robaina's opinions by articulating that other medical evidence showed that Plaintiff had full range of motion of both shoulders after a 2017 right shoulder surgery and a 2018 left shoulder surgery. He took note that Plaintiff's left knee only had mild effusion and mild instability and Plaintiff's gait remained unimpaired. The ALJ supported these conclusions based on numerous physical examinations conducted by other physicians and a State agency psychological consultant.

Plaintiff argues the record as a whole is very different than this characterization by the ALJ. He supports this argument by listing out in detail many of Plaintiff's medical visits with at least six other physicians that examined Plaintiff. However, a closer look at these opinions supports the ALJ's conclusions and undermine Dr. Robaina's medical opinions. For example, while Plaintiff clearly had consistent knee and shoulder pain, doctors Hector Meruelo and Kofi Agyeman each opined that Plaintiff had relatively mild issues. Dr. Victor Hernandez, during a May 2019 visit, did advise Plaintiff that he should have surgery on his left knee because it was severely affecting his activities of daily living. But apparently, the

hospital denied Plaintiff's request for the surgery due to Plaintiff's alleged lack of financial resources.   But the ALJ was still entitled to weigh that Plaintiff's knee condition was otherwise correctable with appropriate care.

So while the record does show that Plaintiff was advised to get knee surgery more recently and some doctors found more severe issues than others, this does not result in reversible error.   Under the regulations, the ALJ only needed to articulate why Dr. Robaina's medical opinions were not supported and consistent with the record as a whole.   The ALJ did this here by citing to plenty of medical evidence that was inconsistent with Dr. Robaina's opinions.   *See, e.g., Pierson v. Comm'r of Soc. Sec.*, 2020 WL 1957597, at *6 (M.D. Fla. Apr. 8, 2020), *report and recommendation adopted*, 2020 WL 1955341 (M.D. Fla. Apr. 23, 2020) (reversing and remanding the decision by the ALJ in part because the ALJ only articulated a few declaratory sentences as to why a medical opinion only received little weight).

Plaintiff is thus essentially asking the Court to replace the ALJ's analysis under the regulations with his own.   This we cannot do.   *See Crawford*, 363 at 1158-59; *see also Medina v. Saul*, 2020 WL 5628023, at *5 (M.D. Fla. Sept. 21, 2020) (ALJ complied with 20 C.F.R. § 404.1520c by stating, "As the evidence did not support the degree of limitations Dr. Ali placed on the claimant, including her own treatment notes, this opinion was not persuasive.").   Remand under this argument is thus not appropriate because the ALJ clearly considered the supportability and consistency of

Dr. Robaina's opinions as required under the regulations.[2]   And the reasons he cited were based in competent evidence in the record.

### B.   *The RFC Finding is Supported by Substantial Evidence*

Next, Plaintiff argues that the RFC assessment is not supported by substantial evidence because it is inconsistent with the opinions of Dr. Robaina that show that Plaintiff cannot lift weight up to ten pounds or stand or sit for even short periods of time.   An RFC is what a claimant can still do despite his or her limitations and is an assessment based on all the relevant evidence in the record.   An ALJ often considers opinions from medical sources when determining a claimant's RFC because "the final responsibility for deciding these issues is reserved for the Commissioner."   20 C.F.R. § 416.927(e)(2).   The reason the Commissioner is tasked with this determination is because "[g]iving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled."   SSR 96-5P, 1996 WL 374183, at *2 (S.S.A. July 2, 1996); *see also Robinson*

---

[2]   To avoid all doubt as Plaintiff appears to make a tangential argument regarding Plaintiff's lack of funds to pay for knee surgery, the fact that Plaintiff was noncompliant with the recommended knee surgery due to an alleged financial reason is irrelevant as the ALJ did not consider this noncompliance in his decision.   *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) ("[W]hen an ALJ relies on noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment.").

*v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("We note that the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors.").

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess . . . her work-related abilities on a function by function basis . . . [o]nly after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Freeman v. Barnhart*, 220 F. App'x 957, 959 (11th Cir. 2007) (citation omitted).  The social security regulations mandate a narrative discussion of "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record."  SSR 96-8p, at *6.  As such, "[t]he ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for the decision so that a reviewing court will be able to determine whether the ultimate decision is based on substantial evidence."  *Freeman*, 220 F. App'x at 960 (citing *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

In making this determination, "[w]e do not require the ALJ to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole." *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (citing *Dyer*, 395 F.3d at 1211) (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision")); *see also Gully v. Astrue,* 2009 WL

12

1580416, *3 (M.D. Ala. 2009) (finding that an ALJ's failure to "more specific[ally] and explicit[ly] set forth his findings with respect to a claimant's functional limitations and work-related abilities on a function-by-function basis is excusable where it is apparent the ALJ did consider all of the evidence.") (citing *Freeman*, 220 F. App'x at 959-60) (alteration in original).

Here, substantial evidence supports the ALJ's RFC finding regardless of the opinions of Dr. Robaina.   As an initial matter, the RFC determination is reserved for the ALJ, not doctors.   *See Robinson*, 365 F. App'x at 999.   Using this authority, the ALJ properly evaluated the evidence of record in reaching the RFC finding.   Even though Plaintiff disagrees with the ALJ's conclusion, and would resolve the factual issues differently, the decision must be affirmed where, as here, it is supported by substantial evidence in the record as a whole.   *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

As we already mentioned in rejecting Plaintiff's initial argument, the ALJ discussed in detail why Dr. Rabaina's opinion was inconsistent and unsupported by other medical evidence.   This includes opinions from multiple treating physicians and the State consultant.   For instance, the consultant found that Plaintiff was limited to a range of light work such as simple, routine, and repetitive tasks.   This finding was consistent with medical notes from November 2018 that show that Plaintiff denied using an assistive device to walk and could walk significantly long periods of time.   Further, a January 2019 MRI showed that he only had mild tearing, moderate osteoarthritis, and mild cartilage loss.

13

In sum, the ALJ evaluated Plaintiff's medical condition as a whole when making the RFC finding, including the opinion of Dr. Robaina.   Substantial evidence thus supports the finding that Plaintiff had the RFC to perform light work as defined in 20 C.F.R § 404.1567(b) with some exceptions.

### C.     *The ALJ Properly Evaluated Plaintiff's Subjective Symptoms*

Last, Plaintiff argues the ALJ improperly discredited Plaintiff's testimony regarding his subjective symptoms.   When a claimant attempts to establish a disability based on testimony of symptoms, the claimant must show "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).   A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability."   *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted).

If an ALJ discredits a claimant's subjective testimony, then the ALJ "must articulate explicit and adequate reasons for doing so."   *Wilson*, 284 F.3d at 1225. "While an adequate credibility finding need not cite particular phrases or formulations[,] broad findings that a claimant lacked credibility . . . are not enough . . . ."   *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995); *see also* SSR 96-7P, 1996 WL 374186, at *2 (S.S.A. July 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case

14

record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

When evaluating the credibility of a claimant's reports of the severity of her or his condition, an ALJ may examine the extent to which the claimant has sought medical treatment.   SSR 96-7p, 1996 WL 374186, at *7.   An ALJ may also consider whether test results in medical records reveal normal findings.   *Brown v. Comm'r of Soc. Sec.*, 680 F. App'x 822, 826 (11th Cir. 2017) (finding that evidence supported the ALJ's determination that the claimant was only partially credible where no physician suggested claimant could not work, physicians reported mostly normal conditions, MRI scans were normal, doctors recommended conservative treatments, and claimant could engage in a range of activities).   Moreover, an ALJ may consider a claimant's daily activities when making a credibility finding.   *See* 20 C.F.R. § 404.1529(c)(3).   When examining daily activities, an ALJ must consider the record as a whole.   *See Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (faulting Appeals Council's finding that claimant's "daily activities . . . have not been significantly affected" when the Appeals Council "ignored other evidence that her daily activities have been significantly affected").   This means, for example, that participation in everyday activities of short duration will not prevent a claimant from proving disability.   *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997).

The ALJ here found that the objective medical evidence did not align with Plaintiff's allegations regarding his disabling symptoms and limitations.   In doing

15

so, the ALJ relied on medical evidence that showed that both of Plaintiff's shoulders and left knee had generally mild issues over a long period of time.

Plaintiff's entire argument boils down to the conclusion that Plaintiff's "self-reported symptoms and limitations are entirely consistent with his own hearing testimony as well as his treating and examining sources' findings and opinions, and his allegation of disabling impairments should not have been discounted to the extent the ALJ dis do in the crafting of his rationale." [D.E. 21]. This argument is basically the same as Plaintiff's first two arguments and is again unavailing because the ALJ articulated a variety of medical evidence as to why he discredited Plaintiff's subjective symptoms. This is not reversible error. *See Wilson*, 284 F.3d at 1225-26. Therefore, there is substantial evidence that the ALJ properly discounted Plaintiff's testimony based on objective medical evidence and other evidence in the record. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.927(c)(3)(i).

As noted above, the Court's limited standard of review does not allow for re-weighing the evidence; instead, our inquiry is limited to whether or not substantial evidence in the record as a whole can support the ALJ's findings. *See Richardson*, 402 U.S. at 401; *Winschel*, 631 F.3d at 1178; *Kelley*, 185 F.3d at 1212. The Court thus finds that the ALJ's conclusions are supported by substantial evidence. For these reasons, Plaintiff's motion for summary judgment [D.E. 21] should be **DENIED** and Defendant's motion for summary judgment [D.E. 22] should be **GRANTED**.

## IV.    *CONCLUSION*

Substantial evidence supports the ALJ's findings as noted in his unfavorable decision.    The ALJ's conclusion applied proper legal standards and any errors therein did not prejudice Plaintiff and were harmless.    For the foregoing reasons, the undersigned hereby **RECOMMENDS** that Plaintiff's motion for summary judgment [D.E. 21] should be **DENIED**, that Defendant's motion for summary judgment [D.E. 22] should **GRANTED**, and that the decision of the Commissioner should be **AFFIRMED**.

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 10th day of September, 2021.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

17